**SCHUTT MANUFACTURING CO.,**
**Plaintiff-Appellant,**

v.

**RIDDELL, INC., Defendant-Appellee.**

**No. 80–2557.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1981.

Decided March 22, 1982.

The patent in suit, U.S. Patent No. 3,263,-236 ('236), involves attaching a face mask to a football helmet with resilient straps in such a manner that highly localized stresses are decreased, eliminating helmet breakage, and providing for increased shock absorption of blows to the mask. It contains eight claims, each of which describes a combination of a football helmet, a grid-like face mask, and various resilient means of connecting the mask to the helmet at the top and sides of the mask. The patent was issued to D. C. Humphrey, Schutt's president, on August 2, 1966, and subsequently assigned to Schutt.

## I.

Schutt is an Illinois corporation whose major business is the manufacture of face masks used to protect football players, and of strap means for securing the masks to football helmets. Riddell is an Illinois corporation which produces sporting goods, with football helmets providing the major source of its income. Schutt sold face masks to Riddell until 1976, when Riddell decided to buy masks elsewhere, and dropped Schutt as a supplier.

Schutt owns the U.S. Trademark Registration on the term "Full Cage," for use on its face masks. In 1976 Riddell issued a dealer newsletter, published its 1977 catalog, and ran an advertisement, all announcing that it was introducing a new line of masks. As a result of these communications, Schutt advised Riddell that Riddell was using the Full Cage trademark without authorization, unfairly competing by using Schutt style and sizing designations, and infringing the '236 patent. Riddell denied the charges of infringement and unfair competition, but subsequently agreed to discontinue use of the expression Full Cage, and of the disputed style and sizing designations. This agreement was reiterated at a meeting between the parties on July 13, 1977, and again in writing on July 21, 1977. Subsequently, Riddell filed a petition to

Albert L. Jeffers, Fort Wayne, Ind., for plaintiff-appellant.

James P. Ryther, Chicago, Ill., for defendant-appellee.

Before PELL and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

The plaintiff-appellant Schutt Manufacturing Co. (Schutt) appeals from the district court's grant of summary judgment in favor of defendant-appellee Riddell, Inc. (Riddell). The court found Schutt's patent for a mounting used to attach a protective face mask to a football helmet invalid, and dismissed Schutt's claims of trademark infringement, unfair competition, and violation of consumer warranty laws.

* Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by desig-

nation.

cancel Schutt's Full Cage trademark in the Patent and Trademark Office. Fitting instructions for Riddell helmets issued in 1979 included a photograph of a Riddell helmet with a Schutt mask.

Schutt filed the instant suit in May 1978, alleging infringement of the '236 patent, trademark infringement, unfair competition, and violation of the consumer product warranty laws. The trial court granted summary judgment for Riddell at the close of discovery, noting "[s]eldom have we seen a lawsuit as unwarranted and frivolous as this one." As to the counts of trademark infringement and unfair competition, the court ruled that Schutt had demonstrated no damages as a result of Riddell's conduct, and that any claim for injunctive relief was mooted by Riddell's agreement not to persist in such conduct. On the 'warranty claim, the court ruled that Riddell had not done the acts complained of and further that Schutt did not have standing to bring an action under the consumer product warranty laws. The court also granted summary judgment on Schutt's claim of patent infringement on two alternative grounds: first, that the patent was void for overclaiming; and second, that the patent was invalid for obviousness under the test of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

## II.

Schutt initially contends that the district court erred in finding that the '236 patent was invalid. This contention is based on two assignments of error. First, Schutt claims the court erroneously applied the overclaiming doctrine of *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938), and that the court's interpretation of that doctrine is only applicable to cases of contributory infringement. Second, Schutt maintains the district court erred in finding that the Schutt '236 mounting would have been obvious to one skilled in the prior art of mask mounting because there was no evidence as to the level of ordinary skill in the art, and thus an unresolved issue of material fact remained. We turn first to the question of obviousness.

In reviewing a district court's determination of obviousness, we are required to examine: (1) the scope and content of the prior art; (2) the differences between the prior art and the claim at issue; and (3) the level of ordinary skill in the pertinent art. *Mooney v. Brunswick Corp.*, 663 F.2d 724 (7th Cir. 1981) (citing *John Deere*). If there are any genuine issues of material fact regarding any of these questions, summary judgment is inappropriate and must be denied. *Medical Laboratory Automation, Inc. v. Labcon, Inc.*, 670 F.2d 671 at 673 (7th Cir. 1981). We therefore turn to review each of the *John Deere* considerations to ascertain whether the presence of a disputed issue of material fact renders summary judgment improper.

### A. The Prior Art

Face masks for football helmets typically consist of a grid of metal rods covered with a rubber-like material. The masks are then attached by various means to the front of a football helmet. Early masks, such as the McMillan mask developed in the 1930's, employed such means as leather lacing or rivets for securing the masks to the leather helmets of that era.

The development of hard plastic helmet shells led to changes in the means for attaching masks. Rigid means of attachment, such as bolts or rivets, originally used, sometimes caused the shells to break under the stress of hard contact. An example of how the prior art attempted to remedy this problem is found in Schutt's earlier patent No. 3,139,624 ('624). The means for securing the mask to the helmet in '624 include essentially the same "top pivot strap" mounted at the front center of the helmet as the '236 patent. The '624 patent uses side-securing latches, consisting of a groove or channel in a block or pad of resilient rubber-like material, to avoid a rigid connection between the mask and helmet. These side-securing means are described as having the additional advantages of permitting the mask to swing up away

from the face to avoid whiplash injury, and giving greater ease in donning and removing the helmet. They also allow access to the face without removing the helmet in the event of injury, although that advantage was not contemplated at the time the patent was issued. In practice, the '624 patent permitted the mask to slip out of the side latches too easily. The design was not extensively used because it did not fulfill its protective function, and furthermore, could cause injury to a player if the mask opened during play. No issue of material fact is asserted as to the state of the prior art.

B. The Differences Between the Prior Art and the Patent in Issue

The '236 patent differs from the '624 patent primarily in that the side-securing means are no longer grooved or channelled latches, but now include "strap elements" which pass around the side of the mask, and are then secured to the side of the helmet. The difference from '624 is thus that the mask is now tied to the sides of the helmet, rather than merely wedged into a resilient holder attached to the helmet sides. Schutt claims that '236 has two principal advantages over '624:

(1) It provides some movement or resilience to absorb impacts, thereby reducing the danger of injury to the player and damage to the helmet;

(2) It permits cutting the side straps to raise the mask and afford access to the player's face and airway.

The latter advantage is not mentioned in the patent although reference to it is made in the file wrapper.

We conclude that the differences between '236 and the prior art, as found in '624, are minimal. Both '624 and '236 involve a pivoting center hinge mounting with resilient straps. Both use resilient side-securing means intended to provide resilience to absorb impacts. As to the argument that the straps in '236 can be cut to gain access to a player's face, we note that this advantage was not claimed in the '236 patent itself. As the Supreme Court commented in *Graham v. John Deere Co.*, 383 U.S. at 25, 86 S.Ct. at 697:

Petitioners' argument basing validity on the freeflex theory raised for the first time on appeal is reminiscent of *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545 [58 S.Ct. 662, 82 L.Ed. 1008] (1938), where the court called such an effort "an afterthought. No such function . . . is hinted at in the specifications of the patent. If this were so vital an element in the functioning of the apparatus it is strange that all mention of it was omitted."

Moreover, this feature is not materially different from the swing-away feature of the '624 patent which would permit such access without requiring any cutting of the straps. Because we reject Schutt's contention that the '236 patent had advantages not found in '624, there is no issue of material fact on this question either.

C. The Level of Ordinary Skill in the Art

The third inquiry mandated by the *John Deere* Court requires determination of the level of ordinary skill in the art. That level is usually established through the testimony of experts familiar with the art and the patent at issue. *See, e.g., Mooney v. Brunswick Corp.*, 663 F.2d 724, 735–36 (7th Cir. 1981). Schutt claims that a genuine issue of material fact exists as to the level of skill, and that it was improper for the trial court to grant summary judgment in the absence of evidence establishing that level of skill. *Intermountain Research & Engineering Co. v. Hercules, Inc.*, 406 F.2d 133 (9th Cir. 1969).

As this court recently reiterated in *Medical Laboratory Automation, Inc. v. Labcon, Inc.*, 670 F.2d 671 (7th Cir. 1981),

if the differences between the patent in suit and the prior art are such that the subject matter as a whole is obvious to a lay[person], a determination of the level of skill on the basis of expert testimony in the pertinent art would be useless.

At 674 (quoting *Lee Blacksmith, Inc. v. Lindsay Brothers, Inc.*, 605 F.2d 341, 344 (7th Cir. 1979)); *Harvestall Industries, Inc. v. Hochstetler*, 656 F.2d 1232, 1235 (7th Cir.

1981) (where design of patent is not particularly sophisticated nor markedly different from the prior art, expert testimony on level of skill is unnecessary). As our discussion above makes clear, the patent in suit is not markedly different from the prior art, and the concept of tying the mask to the helmet with a flexible strap is not one of such complexity that expert testimony is compelled. When the level of skill is obvious to a layperson, that issue is not materially in dispute. *Labcon*, at 674. We therefore find that the trial court did not err in granting summary judgment without the benefit of evidence of the level of ordinary skill in the prior art.

### D. Conclusion

■ We conclude that the district court properly determined that the '236 patent was obvious and that no issues of material fact barred the grant of summary judgment on that basis. We believe the addition of a resilient strap means to prevent the slip-out which occurred under the '624 patent would have been obvious to a mask-attachment maker reasonably skilled in and familiar with the prior art. Although the district court's findings on the obviousness question could indeed have been more detailed, we hold it did not err in its ultimate conclusion of invalidity on that basis.

In light of our affirmance of the district court's obviousness determination, we need not reach the question whether that court correctly applied the overclaiming doctrine of *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). We turn therefore to the trial court's treatment of Schutt's claims of trademark infringement and unfair competition.

### III.

The trial court ruled that Schutt had not demonstrated any damage as a result of Riddell's conduct as alleged in the trademark infringement and unfair competition counts of the complaint. It further ruled that because Riddell did not threaten to continue in the conduct complained of—and in fact had discontinued that conduct more than a year prior to the commencement of this action—the request for equitable relief was moot. Schutt contends that genuine issues of material fact remained as to the "validity" of its trademark, its infringement by Riddell, the legality of Riddell's conduct, and therefore that summary judgment on these claims was inappropriate.

■ Schutt's complaint charged infringement of its trademark "Full Cage," under 15 U.S.C. § 1114(1) (1976); common law unfair competition by use of the trademark and Schutt style and size designations; and false designation of origin in violation of 15 U.S.C. § 1125(a) (1976). The elements of each of these causes of action are essentially similar, and the same set of facts will support a suit for either. *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 n.16 (7th Cir. 1976) (*Burrough I*); *see Toro Co. v. Textron, Inc.*, 499 F.Supp. 241, 248 n.17 (D.Del.1980); J. McCarthy, Trademarks & Unfair Competition § 27:5A at 250 (1973). The test to be used in determining whether a violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 576 (7th Cir. 1978) (*Burrough II*). A showing of a likelihood of confusion alone will suffice to support a grant of injunctive relief. *See, e.g., Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753–54 (8th Cir. 1980); *Burrough II* at 578.

■ A higher standard of proof is required for the grant of money damages, however. A party seeking such relief is required to show not only the likelihood of such confusion, but must demonstrate that it has been damaged by actual consumer reliance on the misleading statements. *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648–49 (3d Cir. 1958); *Square D Co. v. Sorenson*, 224 F.2d 61, 65–66 (7th Cir. 1955); *Toro Co. v. Textron, Inc.*, 499 F.Supp. 241, 253–54 (D.Del.1980); *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 325–26 nn.19 & 20 (E.D.Pa.

1976); *Field Enterprises Educational Corp. v. Cove Industries, Inc.,* 297 F.Supp. 989, 996–97 (E.D.N.Y.1969); *see Pennwalt Corp. v. Plough, Inc.,* 85 F.R.D. 257, 259–60 (D.Del.1979); J. McCarthy, *supra,* § 27:5A at 250–51. Such reliance may be shown not only by evidence of actual diversion of sales, but also by such proof of actual customer deception as surveys, *see, e.g., Burrough II* at 578, or testimony of a dealer, distributor, or customer on the actual deception issue, *see, e.g., Toro,* 499 F.Supp. at 254 & n.25.

■ Riddell's motion for summary judgment asserted that no such actual consumer reliance had occurred, and that Schutt had not provided evidence of such confusion in response to specific interrogatories directed to that issue. Schutt did not submit affidavits or other matter demonstrating the existence of any issue of material fact as to such confusion. It was thus proper for the district court to grant summary judgment in favor of Riddell on Schutt's claims for damages under the trademark infringement and unfair competition counts of the complaint. *See Zirin Laboratories International, Inc. v. Mead-Johnson & Co.,* 208 F.Supp. 633, 635 (E.D.Mich.1962) (appropriate interrogatories determining whether plaintiff's damages were nonexistent would be proper grounds for summary judgment on trademark infringement and unfair competition claims).

■ The trial court also granted summary judgment for Riddell on Schutt's claims for injunctive relief on the trademark and unfair competition counts of its complaint. It is within the discretion of the trial court to grant or deny an injunction against conduct which has ceased and is not likely to recur. *Scotch Whisky Association v. Barton Distilling Co.,* 489 F.2d 809, 813 (7th Cir. 1973); *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 649 (3d Cir. 1958); *John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 326 n.20 (E.D.Pa. 1976); *Field Enterprises Educational Corp. v. Cove Industries, Inc.,* 297 F.Supp. 989, 997 (E.D.N.Y.1969). The court below ruled that because Riddell clearly did not threaten to persist in or resume the allegedly infringing or unfair conduct, equitable relief would be inappropriate. We find that the district court did not abuse its discretion in granting summary judgment denying the injunction.

Schutt points to two occurrences which it contends raise an issue of material fact as to Riddell's intention to continue the infringing and unfair conduct. First Schutt relies on the 1979 issuance of fitting instructions for a Riddell helmet which are illustrated by photographs of a Riddell helmet with a Schutt mask attached; second, Schutt points out that Riddell has filed a petition in the U.S. Patent and Trademark Office to cancel Schutt's Full Cage trademark on the grounds of descriptiveness. These occurrences do not raise any issue of material fact as to Riddell's intent to resume infringement or unfair conduct. As to the fitting instructions, many Schutt masks are still used in association with Riddell helmets, and it is therefore not deceptive to show a photograph of such a combination. Riddell's filing of the cancellation petition, rather than evidencing any intention to infringe, compels precisely the opposite inference—that it acknowledges that the trademark is registered to Schutt at present, and will refrain from using it as long as that status obtains. Riddell's efforts to change that status through the appropriate statutory means cannot be the basis of an inference that it intends to violate the mark. We hold therefore that the trial court did not err in ruling that no issue of material fact existed, and that it did not abuse its discretion in denying the issuance of injunctive relief.

We have considered the other issues raised by the appellant and find them without merit. For all the foregoing reasons the judgment appealed from is

Affirmed.