August 10, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

____________________

No. 92-2388

AKTIEBOLAGET ELECTROLUX,

Plaintiff, Appellant,

v.

ARMATRON INTERNATIONAL, INC.,

Defendant, Appellee.

____________________

No. 92-2439

AKTIEBOLAGET ELECTROLUX,

Plaintiff, Appellee,

v.

ARMATRON INTERNATIONAL, INC.,

Defendant, Appellant.

____________________

ERRATA SHEET

The opinion of this Court issued on July 15, 1993, is amended as follows:

Page 3, footnote 2, line 2 - add additional sentence, "Consequently Armatron will be referred to throughout this opinion as Appellee."

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

____________________

No. 92-2388

AKTIEBOLAGET ELECTROLUX,

Plaintiff, Appellant,

v.

ARMATRON INTERNATIONAL, INC.,

Defendant, Appellee.

____________________

No. 92-2439

AKTIEBOLAGET ELECTROLUX,

Plaintiff, Appellee,

v.

ARMATRON INTERNATIONAL, INC.,

Defendant, Appellant.

____________________

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, 
U.S. District Judge
]

____________________

Before

Torruella, Cyr and Boudin,

Circuit Judges
.

_____________________

Paul J. Hayes
, with whom 
Dean G. Bostock
, and 
, were on brief for plaintiff.

Arnold E. Cohen
, with whom 
, was on brief for defendant.

____________________

July 15, 1993

____________________

TORRUELLA, 
Circuit Judge
et seq
.
1:

any person who shall, without the consent of the registrant -- 

shall be liable in a civil action by the registrant for the remedies herein provided.

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- 

(A) is likely to cause confusion, or to cause mistake, or to deceive . . . 

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

 Appellant Aktiebolaget Electrolux holds a trademark for a line of gardening products called "Weed Eater." Appellee Armatron International, Inc. subsequently sold a gardening product variously called "Leef Eeter," "Leaf Eater," "Flowtron Leaf Eater," and "Vornado Leaf Eater." For convenience, we will refer to appellee's product as a Leaf Eater. The district court, after a bench trial, issued an injunction requiring appellee to use the term Leaf Eater only in conjunction with the Flowtron or Vornado logos, but declined to award appellant damages. Finding no error, we affirm.
2: Armatron filed a separate notice of appeal docketed as No. 92-2439, but ultimately did not attack the judgment. Consequently Armatron will be referred to throughout this opinion as Appellee.

Appellee has sold Leaf Eaters since 1987. The product consists of a free-standing barrel, into which the user pours collected leaves. A nylon string mechanism in the barrel shreds the leaves and ejects the fragments at the bottom. The shredded leaves may be used as mulch. Alternatively, the entire apparatus can be positioned over a garbage can, allowing the user to dispose of the shredded leaves easily. Appellee boasts that the Leaf Eater will convert eight bags of normal leaves into one bag of shredded leaves. Leaf Eaters thus perform only one function: they shred leaves.

Appellee contends that its use of the Leaf Eater name flows naturally from the name of its previous product, the Skeeter Eeter, which was used to control insects. Skeeter Eeter was never challenged as an infringing mark. Prior to adopting the Leaf Eater mark, however, appellee conducted a trademark search to determine whether it was available legally. Appellee learned, in fact, that Leaf Eater was trademarked by a company called Idea Bank, but that the trademark had since lapsed. Appellee also learned about the Weed Eater trademark, which appellant trademarked even before Idea Bank trademarked Leaf Eater. Appellee concluded that Leaf Eater was an unprotected mark, available for use in connection with a leaf shredding machine.

After appellant complained that Leaf Eater unlawfully infringed on the Weed Eater mark, appellee attached the name brands Flowtron or Vornado in front of Leaf Eater. The injunction in this case essentially replicates this practice. The district court ordered appellee to use Flowtron or Vornado in the same or greater size type as Leaf Eater. Furthermore, the district court required appellee to inform all distributors and retailers of the injunction's dictates, so that all advertisements would comply. If the advertisements nonetheless do not comply, then appellee cannot reimburse the distributors or retailers for the cost of advertising.

The district court based the injunction on a series of eight factual findings which we have deemed relevant in trademark infringement suits. 
See
 
Keds Corp.
 v. 
Renee International Trading Corp.
see also
 
Keds
Volkswagenwerk Aktiengesellschaft
 v. 
Wheeler
, 814 F.2d 812, 817 (1st Cir. 1987). No one factor is conclusive as to likelihood of confusion, and the district court must consider each. 
Keds
, 888 F.2d at 222. We will not disturb the district court's findings on the eight factors unless they are clearly erroneous. 
Id.

The findings made by the district court in this case are summarized as follows:

1) 
Similarity of Marks
: The Leaf Eater mark is similar to the Weed Eater mark, but the similarity is diluted by the frequent use of appellant's logos Vornado and Flowtron.

2) 
Similarity of Goods
: The goods themselves are similar in only the broadest sense. The Weed Eater blower/vacuum primarily collects leaves, while the Leaf Eater provides a convenient method of disposal. They are in the same ball park, but they are not precisely the same, sharing only the mulching function. Persons wishing to buy a Weed Eater would not buy a Leaf Eater by mistake.

3, 4, 5) 
Channels of Trade, Advertising and Class of Prospective Purchasers
:
3: Treating these factors together has become somewhat of a pattern in this circuit. 
See
 
Boston Athletic Ass'n
 v. 
Sullivan
Volkswagenwerk Aktiengesellschaft
 v. 
Wheeler
Pignons S.A.
 v. 
Polaroid Corp.
, 657 F.2d 482, 488 (1st Cir. 1981).

 The products are sold side-by-side in the same stores and at the same price, advertised in the same media, and aimed at similar consumers.

6) 
Evidence of Actual Confusion
: Appellant made only a weak showing of actual confusion through an equivocal survey, showing at best name association confusion. Appellant was unable to produce any instances of actual consumer confusion after both products coexisted on the market for six years.

7) 
Appellee's Intent in Adopting the Mark
: Appellee did not act in bad faith in adopting the mark, but was aware of appellant's strong trademark and the risk of legal challenge.

8) 
Strength of Mark
: Weed Eater is a strong mark, but not one that occupies the field.

Appellant does not contest the district court's findings seriously, and we do not find them clearly erroneous. In light of its findings on these factors, the district court found that appellee's use of the Leaf Eater mark by itself infringed on appellant's Weed Eater mark, but use of Flowtron Leaf Eater or Vornado Leaf Eater did not. We review the district court's injunction on a clearly erroneous standard, because it reflects the district court's factual finding on likelihood of confusion. 
Keebler Co.
 v. 
Rovira Biscuit Corp.
, 624 F.2d 366, 377 (1st Cir. 1980). That factual finding, in turn, rests on the district court's weighing of the eight factors discussed above.

Of the eight factors, the strongest tending towards confusion in this case were the ones addressed together: the similar channels of trade, advertising and class of prospective purchasers. Appellant's strong mark also weighed in favor of a finding of likelihood of confusion. 

On the other hand, the weak evidence of actual confusion weighs quite heavily against a finding of likelihood of confusion. While a showing of actual confusion is not required to establish infringement, an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists. 
Pignons S.A.
 v. 
Polaroid Corp.
Keebler
, 624 F.2d at 377 (coexistence for three and one half years). In this case, Weed Eaters and Leaf Eaters have coexisted on the market for six years with little actual confusion, twice the amount of time that we previously have found convincing. 
Keebler
, 624 F.2d at 377.

Furthermore, the district court found that the goods themselves are similar only in the broadest sense: they are gardening equipment. The intended use and the cosmetics of the goods, however, reveal significant differences in the two products, negating any significant possibility of confusion.

The remaining two factors present inconclusive evidence as to likelihood of confusion. First, although appellee did not act in bad faith by designating its product Leaf Eater, appellee knew about the Weed Eater mark and the possibility of a legal contest. Second, the district court found that the words Leaf Eater, standing alone, could cause confusion but the use of Flowtron or Vornado in conjunction with Leaf Eater reduced that likelihood.

Taken together, the factors suggest little likelihood of confusion. Only two clearly weigh in favor of it, but their importance in this case is lessened by the lack of actual confusion. Indeed, it seems to us that the lack of actual confusion is all the more persuasive because the products are sold side-by-side, at the same price, using the same advertising media, and to the same consumers.

In this circumstance, we cannot conclude that the district court clearly erred in finding infringement when appellee used the term Leaf Eater alone, but no infringement when appellee used the term Flowtron Leaf Eater or Vornado Leaf Eater. To the contrary, the district court properly crafted the injunction to fit the relevant facts.

The mandates of the injunction are not novel. We previously have found that "otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." 
Astra Pharmaceutical Products, Inc.
 v. 
Beckman Instruments, Inc.
, 718 F.2d 1201, 1205 (1st Cir. 1983) (citing 
Pignons
Fisher Stoves, Inc.
 v. 
All Nighter Stove Works, Inc.
, 626 F.2d 193, 194-95 (1st Cir. 1980)). Appellant contends that we cannot rely on this principle in the present case because those cases involved such well-known names as Polaroid. In contrast, appellant argues, Flowtron and Vornado are unknown marks, meaningless in the minds of the consumers. They do not dilute the infringing aspects of Leaf Eater.

Nothing in those cases, however, indicates that the relative fame of the manufacturer's name only serves to sanitize an otherwise infringing mark. Indeed, when measuring the marks, we look at "the total effect of the designation, rather than a comparison of the individual features." 
Pignons
, 657 F.2d at 487. The relative fame of the terms Flowtron or Vornado may be one ingredient that is added to the mixture, but it is not the only one that arises from the use of those words. The district court found that appellant's survey showed at best a kind of name association confusion between the Weed Eater and Leaf Eater products. When asked who manufactured the Leaf Eater, respondents answered with the names of various prominent manufacturers of gardening equipment, including Weed Eater. Interestingly, twice as many respondents believed that Toro, rather than Weed Eater, manufactured the Leaf Eater. We cannot find any error in the district court's conclusion that the use of Flowtron or Vornado, as the manufacturer's trade name, clarifies this confusion.

Relying on 
Volkswagenwerk
, 814 F.2d at 819, appellant argues that "strong" marks are entitled to "broad" protection. Because the district court found that Weed Eater is a strong mark, the injunction should have bestowed upon it broad protection, such as forbidding the use of the Leaf Eater mark absolutely.

Appellant mischaracterizes our statements in 
Volkswagenwerk

We cannot accept this argument. We have found "a clear distinction between the showing required to establish a right to injunctive relief and that required to establish a right to damages." 
Camel Hair and Cashmere Inst.
 v. 
Associated Dry Goods Corp.
Valmor Products Co.
 v. 
Standard Products Corp.
, 464 F.2d 200, 204 (1st Cir. 1972), reflects the first three rules in a brief passage. We explained that

[s]ince [defendant's] products do not, concededly, compete with [plaintiff's], [defendant] can hardly be thought, in the absence of fraud or palming off, to be a trustee for profits which but for the infringement would have been [plaintiff's], nor, when given the opportunity at several points, was [plaintiff's] president able to specify any damages which his company had suffered.

Id.
 In that case, we denied a request for an accounting, even though we upheld an injunction to stem a trademark violation, because of a lack of actual damages, direct competition, and culpable behavior by the plaintiff. Those factors are thus relevant to an award of damages or an accounting of profits. In 
Raxton Corp.
 v. 
Anania Associates, Inc.
, 668 F.2d 622, 625 (1st Cir. 1982), we did not authorize an accounting for profits when "the two companies do not compete directly for business . . . and [plaintiff] offered no proof of actual damages."

The district court's fourth rule essentially derives from a footnote in 
Quabaug Rubber Co.
 v. 
Fabiano Shoe Co.
 567 F.2d 154, 161 n.15 (1st Cir. 1977), in which we recognized that other circuits granted damages based on deterrence or unjust enrichment theories. In 
Baker
 v. 
Simmons Co.
, 325 F.2d 580, 582 (1st Cir. 1963), we also granted damages on an unjust enrichment theory when the products did not directly compete, but the defendant was guilty of fraud and palming-off. Thus, under our case law damages have never been allowed under the deterrence or unjust enrichment theories absent some form of fraud.

In addition to restating our law on damages correctly, the district court applied the law to the facts correctly.

Consumer Reports
 rate leaf shredders, they discuss the Leaf Eater and various other machines, but do not mention appellant's Weed Eater products. Given the lack of direct competition, we cannot assume that the sale of Leaf Eaters has appropriated any of appellant's sales.

Third, appellee did not act in bad faith so as to loosen the direct competition or actual harm rule, foreclosing the other avenue in the quest for an accounting of defendant's profits. As the district court found, appellee chose Leaf Eater as a natural extension of its previous mark, Skeeter Eeter, not to take advantage of Weed Eater's reputation and good will in the market. Indeed, appellee did so only after its attorney conducted a search to determine Leaf Eater's trademark status, and concluded that Leaf Eater was available for use. Thus, while appellee may have been aware of a challenge, appellee did not act in bad faith in using a mark that it believed available.

For the same reasons, the fourth avenue for relief, involving considerations of deterrence and unjust enrichment, has no place in this situation.

Affirmed
.