**CHRYSLER CORPORATION, Plaintiff,**

v.

**John C. SILVA, Jr., d/b/a J.C. Silva Designs, Ron Torlone, Richard P. Galardi and Leonard Legere, Defendants.**

Civ. A. No. 91–11972–EFH.

United States District Court,
D. Massachusetts.

July 19, 1995.

John L. Welch, Dike, Bronstein, Roberts & Cushman, Boston, MA, Theodore Naccarella, Wolf, Greenfield & Sacks, Boston, MA, Robert D. Cultice, Goldstein & Manello, Boston, MA, for Chrysler Corp.

Anthony M. Fredella, Fredella & Wheeler, Somerville, MA, Mildred J. Elias, Mardirosian & Barber, Watertown, MA, for John C. Silva.

John C. Silva, Rowley, MA, pro se.

Thomas A. Mullen, Wakefield, MA, for Ron Torlone.

Mary Lemieux Sandorse, Sandorse & Associates, Everett, MA, for Richard P. Galardi.

## JUDGMENT

HARRINGTON, District Judge.

Plaintiff Chrysler Corporation instituted the instant action sounding in trademark (trade dress) under Section 43(a) of the Lanham Act, unfair competition and violation of Massachusetts General Laws, Chapter 93A against the Defendant John Silva for his creation of an unique custom car which is known as the Mongoose. At trial, the plaintiff abandoned its unfair competition claim and sought a permanent injunction essentially enjoining the defendant from making, selling, or distributing the Mongoose and all versions thereof. After several days of trial and argument, the Court declined to issue the requested injunction and entered judgment in favor of the defendant on May 18, 1995. After further taking of testimony on the question of the defendant's intent,[1] the Court reaffirms its original finding and enters judgment in favor of the Defendant John C. Silva, Jr., d/b/a J.C. Silva Designs.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby makes the following findings of facts and rulings of law:

## I. FINDINGS OF FACT

1. Plaintiff Chrysler Corporation is a corporation organized and existing under the laws of Delaware with a principal place of business in Highland Park, Michigan. Chrysler is engaged in the business of manufacturing and selling automotive vehicles, parts and accessories. Chrysler's Dodge Viper is entitled to trade dress protection.

2. Defendant John C. Silva, Jr., is an individual residing at 8 Putnam Road, Ipswich, Massachusetts. Mr. Silva is engaged in the business of designing and building custom cars and enjoys a reputation in his field as a talented and creative customizer.

3. Defendant Ron Torlone is an individual residing in Boxford, Massachusetts. In or about June or July, 1989, Torlone hired Motor Incorporated to design and build a car body to fit over his Corvette chassis. Defendant Silva worked for Motor Incorporated and had responsibility for the design and construction of the car body, which ultimately became the Mongoose.

4. Mr. Torlone entered into a Consent Judgment with Chrysler on or about June 24, 1993.

5. Defendant Richard Galardi is an individual residing in Saugus, Massachusetts. Mr. Torlone hired Mr. Galardi to build the mechanicals for his car. Mr. Torlone gave the Mongoose to Mr. Galardi in satisfaction of all amounts that Galardi claimed were due for his services.

6. Mr. Galardi entered into a Consent Judgment with Chrysler on or about September 8, 1993.

7. Defendant Leonard Legere is an individual residing in Georgetown, Massachusetts. Mr. Legere entered into an agreement with Mr. Galardi to purchase the Mongoose for a price payable over time. After paying Mr. Galardi $5,000, Mr. Legere refused to pay any additional amount to Mr. Galardi. When Mr. Galardi demanded the return of the Mongoose, Mr. Legere gave possession of, but not title to, the Mongoose to Chrysler.

8. Chrysler continues to have possession of, but not title to, the Mongoose.

9. Mr. Legere entered into a Consent Judgment with Chrysler in or about September, 1994.

10. In January, 1989, Chrysler introduced the Dodge Viper concept car at the Detroit

---

1. Although the Court originally stated that it would take further testimony on the defendant's intent at the time of the creation of the Mongoose as well as defendant's future intent, as evidenced by his actions after the Judgment entered by this Court on May 18, 1995, the hearing itself was limited solely to the defendant's intent at the time of the creation. The Court notes that any actions taken by the defendant after receiving the original Judgment stating that the Mongoose did not infringe the Dodge Viper were entirely consistent with that Judgment.

International Auto Show. The concept car received a tremendous amount of press coverage, including, but not limited to, the cover of the April, 1989 Road & Track magazine.

11. Mr. Silva saw and/or read the press coverage of the Viper concept car in the Spring and Summer of 1989.

12. Chrysler Corporation introduced the Dodge Viper as a production car, sold through their network of dealerships, in the Spring of 1992.

13. Photographs of the Dodge Viper concept car served as the starting point for the car body designed by Mr. Silva for Mr. Torlone.

14. Mr. Silva made significant modifications to the design of the Dodge Viper in his creation of the car body, including, but not limited to: the windshield; the rollbar; the nose area; the wrap-around area of the mirrors; and the cut lines.

15. Mr. Silva did not intend to duplicate or otherwise copy the Dodge Viper.

16. Mr. Silva at no time owned or had possession of the Mongoose.

17. Mr. Silva has not made another vehicle similar to either the Mongoose or the Dodge Viper.

II. *RULINGS OF LAW*

18. Section 43(a) of the Lanham Act provides, in pertinent part:

(a)(i) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person or

(B) in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1)(A) and (B).

■ 19. Section 43(a)(1) of the Lanham Act prohibits infringement of trade dress which is essentially its total image and overall appearance. *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992). Trade dress embodies "that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, intended to make the source of the product distinguishable from another and to promote its sale." *Ferrari, S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts,* 944 F.2d 1235, 1239 (6th Cir.1991) (citation omitted).

■ 20. To establish a claim for trade dress infringement, plaintiff must prove:

(1) The trade dress must be inherently distinctive or have acquired inherent distinctiveness through secondary meaning;

(2) The trade dress must be "non-functional"; and

(3) The infringement must have created a likelihood of confusion of the source of the product.

*Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758

21. The Court rules, as a matter of law, that the plaintiff established that the Dodge Viper had acquired inherent distinctiveness through secondary meaning and that the trade dress was "non-functional."

■ 22. The following eight factual findings are relevant in determining the likelihood of confusion in a trade dress infringement suit:

1. Similarity of the marks (dress);

2. Similarity of the goods;

3. Channel of trade;

4. Channel of advertising;

5. Class of prospective purchaser;

6. Evidence of actual confusion;

7. Defendant's intent in adopting the mark (dress); and

8. Strength of the mark (dress).

*Aktiebolaget Electrolux v. Armatron International*, 999 F.2d 1, 3 (1st Cir.1993). No one factor is conclusive and the district court must consider each. *Id.*

23. With respect to the element of likelihood of confusion, the law is clear that the "relevant public" is the measure of this factor and not, for example, the individual defendants in this action. *Id.*

24. The Court hereby rules, as a matter of law, that the Plaintiff Chrysler Corporation is entitled to trade dress protection for its Dodge Viper. The Court further rules, however, that it has failed to establish the elements of a trade dress infringement case. Specifically, the Court rules, as a matter of law, that plaintiff did not establish a likelihood of confusion between its vehicle and the Silva vehicle.

25. In considering the eight relevant factors, the Court makes the following determinations:

1. Similarity of the marks (dress)—Chrysler
2. Similarity of the goods—Chrysler
3. Channel of trade—Silva
4. Channel of advertising—Silva
5. Class of prospective purchaser—Silva
6. Evidence of actual confusion—Chrysler
7. Defendant's intent in adopting the dress—Silva
8. Strength of the dress—Chrysler.

26. Evidence introduced at trial demonstrated that the defendant works out of a garage in Ipswich where he creates and sells his custom cars. In contrast, the plaintiff sells its products through its dealerships.

27. Plaintiff advertises its products, including the Dodge Viper, in all major media outlets. The evidence adduced at trial shows that the only advertising obtained by the defendant was in a local car enthusiast magazine.

28. It is clear that the defendant caters to a different class of prospective purchasers than the plaintiff. Customers hire the defendant to create an unique automobile. These customers do not wish the standard vehicle which one could purchase at a Chrysler dealership.

29. The Court is persuaded, after reviewing all the evidence submitted in this action, that the defendant did not intend to copy or otherwise duplicate the Dodge Viper. The Court found the testimony of the Defendant John Silva very credible. Although he used the publicity photographs of the Dodge Viper concept car as a starting point, the car he intended to produce, and ultimately did produce, was different from the Viper. The Court is mindful of the admissions made by the Defendants Ron Torlone, Richard Galardi and Leonard Legere in the Consent Judgments entered in this Court. However, the Court finds the admissions made in those Consent Judgments, undoubtedly made in an attempt to avert an expensive and protracted lawsuit brought by one of the "Big Three" auto makers, less credible than Mr. Silva's testimony.

30. The Court rules, based on the relevant factors and the unique circumstances surrounding this case, that the plaintiff has failed to establish, by a preponderance of the evidence, a likelihood of confusion. This case is distinguishable from the *Roberts* case which has been cited throughout the trial of this action. In *Roberts*, the Sixth Circuit was presented with a case where the defendant admittedly, intentionally copied two Ferrari sports cars, right down to the Ferrari logo. In the instant case, as stated above, Defendant John Silva did not intentionally copy the Dodge Viper. Additionally, while the two vehicles are similar, they are not exactly alike, as was the case in *Roberts*. Finally, in *Roberts*, plaintiff established a likelihood of confusion between the vehicles. As set forth above, the plaintiff has failed to establish, by a preponderance of the evidence, a likelihood of confusion between its Dodge Viper and the defendant Mongoose.

31. Judgment is entered on behalf of Defendant John C. Silva, Jr., d/b/a J.C. Silva Designs.

SO ORDERED.