Eckel Indus., Inc.                    CV-95-459-SD  02/11/98

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


<u>Eckel Industries, Inc.</u>


        v.                        Civil No. 95-459-SD


<u>Primary Bank;</u>
<u>Superior Door Corporation;</u>
<u>Robert E. Sager, individually</u>


O R D E R


In this action, plaintiff Eckel Industries, Inc. (Eckel) alleges that defendants converted plaintiff's proprietary information and assets in violation of common law and engaged in unfair trade practices and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125.  Presently before the court are defendant Superior Door's motion for summary judgment on the issue of damages and defendants' assented-to motion to stay completion of discovery and expert disclosures.


Background

Eckel is a company engaged in the design, manufacture and sale of impact traffic doors.  Early in 1991, James Collins, a vice president at Eckel, decided to form a new company to compete with Eckel in the impact door market.  Collins obtained engi

neering drawings, material suppliers and prices, sales representative lists, customer lists and sales data, and other information from Eckel. While still employed by Eckel, Collins met with loan officers at First New Hampshire Bank to discuss financing for his new venture. During these meetings, Collins provided the information obtained from Eckel to the loan officers. During this period, Collins also ordered seven sets of Eckel's impact doors and had them shipped to a warehouse in Nashua, New Hampshire, under a fictitious name. On March 4, 1992, Collins incorporated the new venture under the name of Antco.

Defendant Sager, a loan officer at Peterborough Bank, learned in July of 1992 that Collins was dissatisfied with First New Hampshire. Sager offered a loan from Peterborough, which Collins accepted. Sager used Eckel's information to underwrite the loan. In September of 1992, Eckel learned of the loan, and in November demanded Peterborough return all proprietary and confidential information. Antco subsequently defaulted on the loan. Peterborough then seized Antco's assets, including Eckel's proprietary and confidential information, photographs of doors, and Eckel's marketing materials, and sold these assets to the defendant Superior Door.

Eckel then wrote to Superior warning that Antco's assets included trade secrets and proprietary information belonging to

Eckel.  Despite this warning, Superior obtained possession of the assets.  Superior then used photographs of seven models of Eckel's doors in it sales literature, identifying them as Superior's doors.

Discussion

## 1. Standard for Summary Judgment

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Because the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Sav., 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  To resolve a motion for summary judgment, the court must scrutinize the entire record in the light most favorable to the non-movant, with all reasonable inferences resolved in that party's favor.  See Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).

3

"In general, . . . a party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, 515 U.S. 1103 (1995).

2. The Lanham Act Claim

Eckel alleges that Superior has violated section 43(a) of the Lanham Act.  See 15 U.S.C. § 1125(a).  This section creates a cause of action for unfair competition based on false designation of origin or false or misleading representation of fact used in connection with the sale of a product or in an advertisement. Id.  Because section 43(a) applies both to false representations made by the defendant about its own goods and to false statements made by the defendant about the plaintiff's goods, the section applies to trade libel as well as unfair competition and false advertising.  In this case, Eckel alleges that Superior made false and misleading statements about Eckel's products.  In addition, Eckel alleges that by using pictures of Eckel's doors

4

in its promotional literature, Superior palmed off[1] its doors as Eckel doors and falsely advertised that its doors were of a higher quality than they actually were. The standard for determining a violation of the Lanham Act, regardless of whether the alleged violation is based on trademark infringement, misleading designation of origin, or false advertising, is likelihood of confusion. See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.03 (3d ed. 1996). Thus, to establish a violation of the act, the plaintiff must show that the defendant has either caused actual consumer confusion as to the nature, qualities, or source of the product, or that a large number of consumers are likely to be confused. See Schutt Mfg. Co. v. Riddell, Inc., 673 F.2d 202, 206 (7th Cir. 1982). A plaintiff who proves likelihood of confusion normally will be entitled to an injunction. See id. Currently at issue, however, is whether Eckel may be entitled to collect monetary damages.

"As one commentator has observed, '[t]he case law on monetary recovery in trademark infringement cases is a confusing melange of common law and equity principles . . . finding little statutory guidance in the Lanham Act." Aktiebolaget Electrolux

---

[1] "'Palming off' has been defined as 'an attempt by one person to induce customers to believe that his products are actually those of another.'" Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 n.13 (1st Cir. 1977) (quoting Remco Indust., Inc. v. Toyomeka, Inc., 286 F. Supp. 948, 954 (S.D.N.Y. 1968)).

v. Armatron Intern., Inc., 829 F. Supp. 458, 461 (D. Mass. 1992), (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:24, at 495 (2d ed. 1982)), aff'd, 999 F.2d 1 (1st Cir. 1993). The award of damages in both unfair competition and trademark cases is governed by section 35, which states that plaintiffs may recover damages subject to the principles of equity, provided that such award is compensatory and not a penalty. See 15 U.S.C. § 1117(a).

The United States Court of Appeals for the First Circuit has held that in both trademark infringement and unfair competition cases, there is "'a clear distinction between the showing required to establish a right to injunctive relief and that required to establish a right to damages.'" Aktiebolaget Electrolux v. Armatron Intern., Inc., 999 F.2d 1, 5 (1st Cir. 1993) (quoting Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986)). The First Circuit has delineated four rules that apply to the award of monetary damages under the Lanham Act.

> These are: 1) a plaintiff seeking damages must prove actual harm, such as the diversion of sales to the defendant; 2) a plaintiff seeking an accounting of defendant's profits must show that the products directly compete, such that defendant's profits would have gone to plaintiff if there was no violation; 3) the general rule of direct competition is loosened if the defendant acted fraudulently or palmed off inferior goods, such that actual harm is presumed; and 4) where defendant's inequitable conduct warrants bypassing the

6

> usual rule of actual harm, damages may be assessed on an unjust enrichment or deterrence theory.

Id.


### a. Damages

To receive monetary relief based upon its damages, the plaintiff must show actual harm, which may be lost sales or loss of good will. To show actual harm, plaintiff must show both that the defendant's deceptive act created consumer confusion and that the plaintiff's injury was caused by consumer reliance on the misleading act. See Schutt Mfg., supra, 673 F.2d at 206. This a considerably higher standard than the mere likelihood of confusion required to receive an injunction. To meet this requirement, the plaintiff may use customer surveys or testimony. See id. at 207.

Some courts have dispensed with the requirement of proof of consumer confusion when the defendant's deed was deliberately deceptive. See PPX Enterprises, Inc. V. Audiofidelity Enterprises, Inc., 818 F.2d 266, 272 (2d Cir. 1987); U-Haul Intern. Inc. v. Jartran, Inc., 793 F.2d 1034, 1041 (9th Cir. 1986). For instance, the United States Court of Appeals for the Second Circuit has stated, "If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the

7

product." PPX Enterprises, Inc., supra 818 F.2d at 272 (quoting American Home Products Corp. v. Johnson & Johnson, 577 F.2d 160, 165 (2d Cir. 1978)). Thus in PPX Enterprises the Second Circuit upheld the jury's finding of actual consumer deception, despite a lack of direct evidence, when the defendant's albums purported to contain feature performances of a particular artist but in fact did not. Id. The court felt that "[g]iven the egregious nature of Audiofidelity's actions, [there was] no need to require appellant to provide consumer surveys or reaction tests in order to prove entitlement to damages." Id. Thus, "a presumption of the element of actual confusion that is needed to prove damages arises upon proof of intentionally deceptive conduct." 4 J. THOMAS MCCARTHY, supra § 30.27[1][b].

### b. Accounting of Defendant's Profits

The defendant's profits may also form the basis for a monetary award in some cases. An accounting of profits, however, is considered an equitable remedy and is not awarded automatically. Courts will deny an accounting where an injunction will satisfy the equities. See Aktiebolaget Electrolux, supra, 829 F. Supp. at 462. In trademark infringement cases, courts allow the defendant's profits to serve as a proxy for the plaintiff's damages if the parties are engaged in direct competition. See 4 J. THOMAS MCCARTHY, supra, §30.25[1].

8

Although the presence of direct competition may be a sufficient ground for awarding an accounting in trademark cases, this court believes that more than direct competition is needed before an accounting can be awarded in a false advertising or unfair competition case. The assumption that the defendant's profits correspond to the plaintiff's lost sales may be unfounded in a false advertising or unfair competition case. Without more, the court cannot assume that the defendant's sales would have gone to the plaintiff but for the false advertisement or deceptive act. In a trademark infringement case, when the parties are in direct competition the defendant's sale of products that appear to originate from the plaintiff suggests that these sales otherwise would have been made by the plaintiff. In a case of false advertising or unfair competition, although the parties may engage in direct competition, the defendant's deception may not relate directly to the plaintiff's product. Awarding the plaintiff monetary damages in such a case could provide a windfall, which should be avoided in Lanham Act cases. See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 (1st Cir. 1977) ("section 1125(a) was not intended to provide a windfall"). Thus, the remedy of an accounting based upon direct competition in false advertising cases should be further limited to cases in which there was a false comparative advertisement or

9

deceptive act that would lead consumer's to mistake the defendant's product for the plaintiff's.

An accounting also may be awarded in some cases, even when there is no showing of direct competition. Because the purpose of an accounting is to disgorge profits gained through wrongful conduct, the defendant's bad faith is a relevant consideration. See Aktiebolaget Electrolux, supra, 829 F. Supp. at 467. Thus courts are often willing to loosen the requirements for an accounting in cases of fraud or palming-off. See Aktiebolaget Electrolux, supra, 999 F.2d at 5.

c. Deterrence and Unjust Enrichment

The First Circuit has also stated that damages may be awarded on a deterrence theory or to prevent unjust enrichment. However, because Congress has directed that a monetary award should not be imposed as a penalty, the court should limit such awards to situations in which an injunction would not satisfy the equities. The First Circuit, while approving this theory, has only awarded damages on an unjust enrichment theory when the defendant was guilty of fraud. See Aktiebolaget Electrolux, supra, 999 F.2d at 6 (citing Baker v. Simmons Co., 325 F.2d 580, 582 (1st Cir. 1963)). Thus this basis for recovery of damages appears duplicative of the aforementioned rule allowing the court to award an accounting when the defendant is guilty of fraud or

10

palming off. However, because the First Circuit has listed these as two distinctive theories, this court concludes that they are not completely coterminous. Thus, under an unjust enrichment or deterrence theory, the court must be able to award damages based upon its own discretion, rather than limited to the defendant's profits.

### d. Eckel's Claim for Damages

Although the law governing monetary relief under the Lanham Act, section 43(a), is made up of a somewhat confusing array of doctrines, two basic principles can be drawn from the law in this circuit. First, to collect damages, a plaintiff must adduce evidence of actual harm and causation. Second, a plaintiff may receive an accounting of defendant's profits, but only upon some showing of culpable conduct by the defendant. In this case, the court interprets Superior's motion as pertaining to the first type of monetary award--damages.

Plaintiff has not met the requirements for receiving damages. Eckel has provided an unrealized growth potential chart, but has provided no evidence of causation, and has failed to provide customer surveys or testimony that would establish actual confusion and reliance.

Furthermore, there is no evidence that this is a case where the court can eliminate the requirement of direct proof of

consumer confusion because the defendant's act was deliberately deceptive. Even assuming the First Circuit would adopt this approach in the appropriate case, Eckel has provided no evidence to indicate that this is such a case. Although Eckel alleges that the doors Superior provided were inferior to the Eckel doors allegedly pictured in Superior's trade literature, Eckel has pointed to no evidence to support this conclusion. To show that Superior's alleged misdeed was so egregious that the jury could infer consumer deception, Eckel would have to show that the doors pictured were markedly different from those provided by Superior, thus amounting to a deliberate deception. Indeed, the use of another's photograph does not violate the Lanham Act if the defendant provides exactly what is pictured and the look of the product is not so distinct it has acquired secondary meaning. See Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F.2d 299, 304 (2d Cir. 1981). In the absence of any evidence of the comparative quality of Eckel and Superior doors, the court cannot allow Eckel's claim for monetary damages to proceed on this theory.

Although the court holds that Eckel has not presented evidence indicating that this is an appropriate case for an award of damages, the court reserves judgment on the potential appropriateness of an accounting.

## 3. Conversion

Superior argues that the court must grant summary judgment on plaintiff's conversion claim.  Superior's argument, however, amounts to the single sentence, "Plaintiff has failed in its interrogatory answers to identify any damages in connection with its conversion claim."  Memorandum of Law in Support of Defendant Superior Door Corporation's Motion for Summary Judgment at 7.  Superior provides no citations for the proposition that the plaintiff must prove specific damages as an element of the tort of conversion.  Under New Hampshire law, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Muzzy v. Rockingham County Trust Co., 113 N.H. 520, 523, 309 A.2d 893, 894 (1973).  Thus the plaintiff must show that the defendant exercised dominion over its property, but there is no requirement that the plaintiff prove specific damages resulting from the conversion.

## 4.  Superior's Discovery Motion

Superior, with the assent of the other parties to this action, has asked the court to stay discovery and expert disclosures pending disposition of Superior's motion for summary judgment.  Today's order, of course, moots that request.  The

13

parties, however, further request the court to extend the deadline for the completion of discovery (presently March 15, 1998) until 90 days from the date of this order and extend the deadline for disclosure of defendant's expert witnesses until 60 days from the date of this order. Mindful of the fact that this court has extended pretrial deadlines twice, the court hereby orders discovery closed 30 days from the date of this order. Defendant's experts shall be disclosed by that date as well.

<u>Conclusion</u>

For the abovementioned reasons, defendant's motion for summary judgment (document 21) is granted in part and denied in part. The court hereby holds in Superior's favor on the plaintiff's claim for actual damages under the Lanham Act. Discovery shall close 30 days from the date of this order (document 31).

SO ORDERED.

                                     _____
Shane Devine, Senior Judge
United States District Court

February 11, 1998

cc:     John J. Kuzinevich, Esq.
        Francis G. Holland, Esq.
        Silas Little III, Esq.
        David W. Rayment, Esq.