Pep Boys v. Aranosian                    CV-94-354-M    11/30/95

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


The Pep Boys, Manny, Moe & Jack,
     Plaintiff,

     v.                                          Civil No. 94-354-M

Robert Aranosian, Lynda Aranosian,
and Capital City Motors, Inc.,
     Defendants.


                         DECISION AND ORDER


     Plaintiff, The Pep Boys, Manny, Moe and Jack ("Pep Boys"),

a Pennsylvania Corporation, brought this suit asserting various

claims under the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), as

well as under New Hampshire's statutory and common law.

Essentially, Pep Boys seeks permanent injunctive relief, monetary

damages, and its attorneys' fees based on defendants' alleged

infringement of its federally registered trademarks.  The case

was tried to the court.


                 **FINDINGS OF FACT AND RULINGS OF LAW**

     Pep Boys owns and operates a chain of retail stores through

which it sells automotive parts, products, and accessories, and

also provides vehicle maintenance and repair services.  Pep Boys

began operations in 1921 and, since 1934, has successfully

registered numerous trade and service marks with the United States Patent Office relating to the "Pep Boys" name. While its business expansion into New Hampshire is very recent, Pep Boys has long operated hundreds of stores throughout the rest of the country. Past annual sales have exceeded 1 billion dollars and in much of the country Pep Boys enjoys a reputation as one of the larger players in the "automotive aftermarket." Pep Boys' stock is listed and traded on the New York Stock Exchange.

Defendants, Robert Aranosian and his daughter Lynda Aranosian, operate a car dealership and auto parts supply store, Capital City Motors, Inc., in Concord, New Hampshire. Robert Aranosian serves as president of defendant Capital City Motors, Inc., and is its controlling shareholder; Lynda Aranosian is an employee and officer of Capital City Motors.

On October 19, 1993, Lynda Aranosian, at the request of her father, successfully registered the trade name "Pep Boys" with the New Hampshire Secretary of State pursuant to applicable New Hampshire law. The Aranosians intended to use the name in connection with the auto parts supply store associated with their automobile dealership. In the eight months that elapsed between

2

the date on which defendants registered the Pep Boys trade name for use in New Hampshire, and July 12, 1994, when this suit was filed, defendants made the following limited uses of the "Pep Boys" name: 1) they obtained a telephone listing in local White and Yellow Pages under the name "Pep Boys Auto Parts"; 2) they printed (but never actually used) invoice forms bearing the mark "Pep Boys Auto Parts"; 3) they mailed one piece of business correspondence on computer generated letterhead marked "Pep Boys Auto Parts" across the top; and 4) they sometimes answered the phone in the auto parts division of Capital City Motors with the greeting, "Pep Boys."

By mid-February 1994, defendants were put on notice that someone else, in fact a national retail auto parts chain, had been using the name "Pep Boys" for decades. In early June, 1994, plaintiff tried, unsuccessfully, to register Pep Boys as its tradename in New Hampshire (due to defendants having filed first), as part of its plan to expand into New Hampshire. Pep Boys' legal counsel contacted defendants by phone and in writing to formally apprise them of the long and colorful history of "Manny, Moe and Jack - the Pep Boys," as well as to notify them of plaintiff's superior legal rights to the Pep Boys name.

3

Plaintiff demanded that defendants cease all use of that name in any form. The Aranosians at first declined to go quietly, refusing to concede plaintiff's point because they believed they were entitled to use the name in New Hampshire by virtue of their local trade name registration, whereupon plaintiff filed suit.

Shortly after suit was filed, defendants sought legal advice, and, no doubt based on that advice and the fact that court intervention was imminent, they agreed to cease using the Pep Boys name. Defendants wrote to the New Hampshire Secretary of State waiving all claims to the name; consented to plaintiff's use of the registered trade name instead; signed and filed a formal Certificate of Discontinuance of the use of the name with the New Hampshire Secretary of State; transferred the NYNEX telephone number and listings to plaintiff; and forwarded all preprinted Pep Boys Auto Parts invoice forms to plaintiff for destruction. Defendants' white flag was displayed reasonably prominently and unmistakably, but it was not enough for plaintiff.

Unsatisfied with the extent of defendants' surrender, Manny, Moe and Jack forged ahead with this litigation, in order to

4

establish the fact of infringement, obtain injunctive relief, and recover damages and attorneys' fees. Pep Boys still pursues numerous claims under the Lanham Act and New Hampshire's statutory and common law, including trademark infringement, false representation and designation, deceptive trade practices, injury to business reputation, and unfair competition. It seeks permanent injunctive relief, monetary damages, attorneys' fees and costs.

**Count I - Trademark Infringement: Lanham Act.**

A. <u>Trademark Infringement</u>

Pep Boys' principal claim alleges trademark infringement under the Lanham Act. 15 U.S.C § 1114(1). To prevail, Pep Boys must establish the following: (1) ownership of a registered mark entitled to trademark protection; (2) use of that mark in interstate commerce; and (3) use of the mark by another in a manner likely to cause confusion or mistake when compared with the plaintiff's registered mark. <u>Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.</u>, 762 F. Supp. 404 (D. Mass. 1991). Defendants concede, and the court finds that plaintiff previously and validly registered the mark "Pep Boys, Manny, Moe, and Jack" in various iterations, that it uses the name in interstate

5

commerce, and that plaintiff's federal registrations are incontestable under Section 15 of the Lanham Act. 15 U.S.C. § 1065. Thus, the dispute related to infringement, such as it is, focuses on whether defendants' use of the trade name "Pep Boys Auto Parts" was "likely to cause confusion" when compared with plaintiff's registered marks.

In this circuit, likelihood of confusion is measured against eight touchstones: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark. Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812 (1st Cir. 1987); Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983). No one factor conclusively decides the issue and each must be considered. Aktiebolaget Electrolux v. Armatron Int'l., Inc., 999 F.2d 1, 3 (1st Cir. 1993)(citing Keds Corp. v. Renee International Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989)). Turning to those touchstones, the court finds as follows.

6

(1)  Similarity of the Marks.

The level of similarity between marks is determined by "the total effect of the designation, rather than a comparison of individual features."  Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)(citations omitted); see also, Volkswagenwerk, 814 F.2d at 817.  In this case it is obvious, and defendants don't seriously contest, that "Pep Boys Auto Parts" is identical in every meaningful way to the various registered marks long employed by plaintiff, including "Pep Boys," "The Pep Boys Manny Moe and Jack," "The Pep Boys Manny Moe and Jack of California," and "The Pep Boys Manny Moe and Jack of California, Inc."  The marks are, therefore, similar under the "total effect" test.

(2)  Similarity of the Goods.

The goods sold by the two parties are also similar. Defendants sell original factory parts for Volvo, Isuzu, and General Motors automobiles.  Plaintiff sells factory and generic replacement parts for virtually all makes and models of automobiles found in this country.  If distinctions could be drawn between the parties' goods they would be neither major nor

7

meaningful ones.  Both parties sell replacement auto parts that undeniably overlap in the auto parts market.

    (3)   <u>The Relationship Between the Parties' Channels of Trade, the Parties' Advertising, and the Classes of Prospective Customers</u>.

The interrelation of these three factors warrants considering them together.  <u>Volkswagenwerk</u>, 814 F.2d at 818; <u>Astra</u>, 718 F.2d at 1206; <u>Pignons</u>, 657 F.2d at 488.  While defendants do little or no business outside the geographic area immediately surrounding Concord, New Hampshire, plaintiff operates retail stores and warehouses throughout the United States.  During the period relevant to this dispute, Pep Boys was not engaged in any retail business in New Hampshire.  The nearest Pep Boys stores were in neighboring states, well beyond commuting distance from Concord (e.g., Providence, Rhode Island, and Springfield, Massachusetts).

Since the goods and services sold by each party — automotive replacement parts and repair services — were virtually identical, the class of prospective customers targeted by each was substantially similar and overlapped.  <u>See</u> <u>Volkswagenwerk</u>, 814 F.2d at 818.

8

Both companies also advertised on similar platforms, though in different markets.  One of the few uses to which defendants actually put the "Pep Boys Auto Parts" name was listing it in the Yellow Pages, a marketing method regularly employed by plaintiff in 30 other states, including neighboring Rhode Island and Massachusetts.

Considering the relevant factors, the court finds that the parties' channels of trade, means of advertising, and targeted customers were similar, if not identical.  No doubt some portion of that class of New Hampshire consumers who had access to the local Yellow Pages and were interested in purchasing replacement auto parts had heard of Pep Boys as a major player in the industry — likely through plaintiff's regional or national advertising — and regarded Pep Boys as a familiar source of reliable goods.

(4)  Evidence of Actual Confusion.

A demonstration of actual confusion, while not strictly necessary to a finding of infringement, can be "very persuasive in determining the likelihood of confusion."  Bayshore Group, 762 F. Supp. at 413 (citations omitted); see also, Original

9

<u>Appalachian Artworks v. Topps Chewing Gum</u>, 642 F. Supp. 1031, 1038 (N.D. Ga. 1986). Pep Boys introduced some evidence of actual confusion, showing that defendants received some bulk mail addressed to "Pep Boys" which was actually intended for plaintiff, and that consumers called the defendants' Pep Boys telephone listing in numbers that would be unusual for a new and relatively unknown auto supply business with an original name. However, no actual sales of goods by defendants to people who thought they were buying plaintiff's goods were proven.

(5) <u>Defendants' Intent in Adopting the Mark</u>.

Robert Aranosian claims to have come by the name "Pep Boys" after recalling a childhood trip to Fresno, California. While in Fresno, Aranosian says he visited a general store called "Pep Boys," liked the name, and recalled it some forty years later when mulling over possible new names for his expanded parts store. In 1993 he asked his daughter, Lynda Aranosian, to register it as a trade name with the New Hampshire Secretary of State. She did so, and the registration was approved as no similar names had been registered previously in New Hampshire.

While Mr. Aranosian's explanation is possible, and while he may actually believe that memories of youth were his sole source of inspiration in coming up with such a unique and original name (one identical to that employed by a national automotive supply chain for some fifty years) the more probable and plausible explanation is rooted in his years of involvement in the automotive industry and his exposure to the Pep Boys name in that context.  The boyhood memory explanation as the sole source of inspiration is also undermined by Lynda Aranosian's inclusion of a banner as part of the Pep Boys logo defendants planned to use. The intended banner was virtually identical in shape and location as the banner employed by the plaintiff and, significantly, plaintiff has only used its banner since 1991, well beyond the reach of a boyhood experience.  (The defendants' intended banner differed in color only in that plaintiff's banner is solid red while defendants' was to be checkered in red and white.)

Defendants' mimicry of plaintiff's marks is simply too plain and obvious to be dismissed as coincidental or based solely on memories of youth.  The court finds that while Robert Aranosian may well have actually recalled the Pep Boys name from a boyhood trip, as he testified, he and Lynda Aranosian also undoubtedly

11

had some exposure to, and awareness of, plaintiff's name and its existence in the national market place when they registered the Pep Boys name locally.

The court finds that defendants adopted plaintiff's federally registered mark(s), intending to acquire exclusive rights to use that mark in New Hampshire. They thought, mistakenly, that by obtaining a state trade name registration they would secure exclusive legal rights to the Pep Boys name in New Hampshire. The adoption was not coincidental.

(6) Strength of the Pep Boys Mark.

"Three factors are used to determine the strength of a mark: the length of time it has been in use; the strength of the mark in plaintiff's field; and the plaintiff's actions in promoting the mark." Bayshore Group, 762 F. Supp. at 414 (citing Pignons, 657 F.2d at 491). A "strong" mark will be accorded broader protection than a "weak" one. Volkswagenwerk, 814 F.2d at 819 (citing Pignons 657 F.2d at 492).

Plaintiff unquestionably established the national strength of the Pep Boys mark. It first registered the mark in 1934, and

12

the company has since acquired a reputation in most of the country as a leader in its field, which reputation is of course inextricably associated with its marks. During the past 15 years, plaintiff spent over $315,000,000 on print, radio, and television promotion of its business and its marks. There can be no reasonable question that the protected marks are both unique and strong ones, and the court so finds.

Considering the enumerated factors as a whole, the court concludes that defendants' intended and actual use of the name "Pep Boys Auto Parts," albeit limited, was nevertheless likely to cause a significant number of consumers (at least those looking through the local White and Yellow Pages) to confuse defendants' identity, products, and services with those of Manny, Moe and Jack, the national chain. Accordingly, the Court finds that defendants' limited use of the Pep Boys name did amount to trademark infringement in violation of 15 U.S.C. § 1114(1) and false designation of origin under 15 U.S.C. § 1125(a). See W.W.W. Pharmaceutical Co., v. Gillette Co., 808 F. Supp. 1013,

13

1019 (S.D.N.Y. 1992) (§1125(a) is broader than § 1114 however both require plaintiff to prove likelihood of confusion).[1]

B.    Lanham Act Relief

Although Pep Boys established defendants' infringement, it is not entitled to the relief it seeks.  Pep Boys seeks a permanent injunction enjoining defendants from using any version of the Pep Boys name in the future.  But, defendants have already unilaterally discontinued their use of the Pep Boys name and, given the absence of any indication that they might use the name

---

[1]    Defendants argue that their entirely intrastate activities are insufficient to support jurisdiction over a Lanham Act claim.  But, "jurisdiction exists to grant relief under the Lanham Act if a defendant's activities although wholly intrastate tend to have a damaging effect on plaintiff's federally protected interstate business."  Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554, 559 (1st Cir. 1982) (quoting Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836, 841 (D. Mass. 1964)).  "[A]n adverse effect on the sales or goodwill of one whose trademark is used in interstate commerce is a sufficiently substantial effect on interstate commerce to entitle the registrant to invoke the protection of the Lanham Act . . . ."  Id. (citing cases).  Plaintiff established that numerous calls were made to the telephone number obtained by defendants under the Pep Boys name after the number was transferred.  Even allowing for "wrong numbers," surely some consumers anxious to shop at Pep Boys were disappointed to learn that contrary to the hope engendered by the listing's promise, no Pep Boys store was conveniently located in the Concord area, thus eroding at least some amount of the good will plaintiff has developed over the years.  Those facts are sufficient to establish an impact on interstate commerce as contemplated by the Lanham Act.

14

in the future, as well as their acknowledgement of plaintiff's superior and exclusive rights (confirmed by defendants' surrender of the local trade name registration in favor of plaintiff), the court is satisfied that defendants have no present intention of using, and are not likely to use, any iteration of the mark in the future.

Accordingly, because I find that defendants do not pose any serious risk of future unauthorized use of the protected marks, I find injunctive relief to be both unnecessary and inappropriate in this case.  See, e.g. Readers Digest Assoc. v. Conservative Digest, 821 F.2d 800, 807 (D.C. Cir. 1987) ("When a defendant has ceased its infringing conduct and shows no inclination to repeat the offense, a court may not issue an injunction . . . ."); M-F-G Corp. v. EMRA Corp., 817 F.2d 410, 411 (7th Cir. 1987) (no abuse of discretion to withhold injunction based upon defendant's promise not to infringe in the future); Knickerbocker Toy Co. v. Azrak-Hamway International, Inc., 668 F.2d 699, 703 (2d Cir. 1982) (defendant's voluntary termination of infringing conduct and assurance that it would not infringe in the future supported denial of injunctive relief); In re Circuit Breaker Litigation, 860 F. Supp. 1453, 1456 (C.D. Cal. 1994) (same) (citing cases).

15

Under the circumstances presented here, the court declines to grant injunctive relief.

Invoking 15 U.S.C. § 1117, plaintiff also seeks money damages. Under Section 1117, victims of infringement are entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Id.; Aktiebolaget Electrolux, 999 F.2d at 5. The award of Section 1117 damages is governed by four rules which are fairly summarized as follows: 1) a plaintiff seeking damages must prove actual harm, such as the diversion of its sales to the defendant; 2) a plaintiff seeking an accounting of the defendant's profits must show that the products directly compete, such that defendant's profits would have gone to plaintiff absent the violation; 3) the general rule of direct competition is loosened if the defendant acted fraudulently or palmed off inferior goods, in which case actual harm is presumed; and 4) where defendant's inequitable conduct warrants bypassing the usual rule of actual harm, damages may be assessed on an unjust enrichment or deterrence theory. Aktiebolaget Electrolux, 999 F.2d at 5; Valmor Products Co. v. Standard Products Corp., 464 F.2d 200, 204 (1st Cir. 1972);

16

Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 n.15 (1st Cir. 1977).

Applying these principles to the facts found here, the court concludes that plaintiff is not entitled to recover monetary damages.

Plaintiff has not established that it suffered any actual harm as a result of defendants' limited use of its marks. It is very unlikely that any business was diverted from plaintiff's operations or that its reputation was damaged in any reliably measurable or meaningful way. It is certainly doubtful, for example, that but for defendants' limited use of the Pep Boys name, potential customers of plaintiff would have driven from Concord, New Hampshire, to either Providence, Rhode Island, or Springfield, Massachusetts (or to the location of any of plaintiff's other New England stores) to buy auto parts from Pep Boys. If some consumers did buy replacement auto parts and repair services from defendants, thinking they were buying from plaintiff, those consumers would probably have either still bought those parts or services from defendants or sought out defendants' competitors in the Concord area, rather than drive to

17

Rhode Island or Massachusetts to buy authentic Pep Boys auto parts or services, even absent the violation. In any event, I find that defendants did not actually make any sales of any competing goods based on their use of the Pep Boys name, and they did not "palm off" any goods as Pep Boys' goods (to the contrary, defendants' goods consisted almost entirely of factory authorized parts, clearly identified as to automobile manufacturer source).

Accordingly, I do not find that plaintiff suffered actual harm, Aktiebolaget Electrolux, 999 F.2d at 5, and decline to award actual damages.

Similarly, Pep Boys is not entitled to an accounting of, or an award of, profits earned by defendants during the relevant infringing period. There simply was no causal connection between defendants' limited use of the Pep Boys name and their general business profits. Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc., 602 F. Supp. 191 (S.D. Iowa 1985). "Where . . . the plaintiff has only shown a likelihood of confusion . . . but has failed to prove tangible harm, an award of profits becomes conjectural . . . ." Aktiebolaget Electrolux v. Armatron Int'l., 829 F. Supp. 458, 470 (D. Mass.), aff'd, 999 F.2d 1 (1st

18

Cir. 1993); See also, Life Indus. Corp. v. Ocean Bio-Chem, 827 F. Supp. 926 (E.D.N.Y. 1993) (no evidence that use of mark was cause of profit); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 265 (1946) (damages cannot be based upon speculation). Here, defendants' profits were not related to the infringement found, that infringement having been quite limited in time and scope. Indeed, this case is best characterized as involving primarily an anticipated rather than realized exploitation of plaintiff's marks.

While the parties competed with each other in the general sense that both sold car parts and related automotive items and services during the relevant period, they never directly competed in the same market for the same customer at the same time. Accordingly, I find that what sales defendants made during the relevant period, virtually all of which were in the Concord, New Hampshire vicinity and virtually all of which consisted of factory authorized brand name parts, generated profits that would not have otherwise gone to plaintiff absent the violation. No customer was shown to have purchased any goods from defendants bearing a "Pep Boys" mark, and any goods or services not sold by defendants would, more likely than not, have been sold by their

19

competitors in the local market.  Plaintiff, of course, did not begin its retail operations in New Hampshire until January of 1995, long after the Aranosians had ceased all use of the name. See Aktiebolaget Electrolux, 999 F.2d at 5; Raxton Corp. v. Anania Associates, Inc., 668 F.2d 622, 625 (1st Cir. 1982) (where companies did not compete and plaintiff showed no actual damages court refused to authorize accounting of defendant's profits).

Accordingly, I find that defendants' profits during the relevant period were not related to their limited use of plaintiff's marks, and that any attempt to quantify what few dollars, if any at all, might have been derived from that limited use would be far too conjectural.

Defendants sold clearly marked goods, did not affix plaintiff's mark to any goods sold, and did not sell any goods posing as "Pep Boys."  Neither did defendants act "fraudulently." They were ill-informed and obviously mistaken, if not negligently ignorant, in asserting exclusive rights to use the Pep Boys name in New Hampshire, but the fact that they openly registered the trade name believing they were entitled to do so, and without actual knowledge of plaintiff's own superior and exclusive legal

20

rights to it, militates against loosening the general rule of direct competition.  See, e.g., Veryfine Products, Inc. v. Colon Bros., Inc., 799 F. Supp. 240, 259 (D.P.R. 1992); Babbit Elecs. v. Dynascan Corp., 828 F. Supp. 944, 958 (S.D. Fla. 1993) aff'd, 38 F.3d 1161 (11th Cir. 1994); Comidas Exquisitos, 602 F. Supp. at 191; Aktiebolaget Electrolux, 999 F.2d at 6.  Accordingly, I decline to presume actual harm.

Finally, I decline to assess damages on an unjust enrichment or deterrence theory under these circumstances.  The equities of this case militate against affording plaintiff relief based upon unjust enrichment or deterrence.  Id.  There was no measurable unjust enrichment, and the evidence (including the tone, tenor, and demeanor of witnesses) convinces the court that while the Aranosians were hardly blameless in their actions and in their handling of this matter, still, they did make reasonable and good faith efforts both to acknowledge plaintiff's superior rights to the Pep Boys mark and to avoid prolonging this litigation.  They consulted legal counsel after suit was filed and they promptly transferred the local trade name registration to plaintiff, relinquished printed material with the Pep Boys name on it, transferred the telephone number, and abandoned all use of and

21

claims to the name. The court is convinced that the Pep Boys' aggressive manner in addressing what should have been an easily resolved problem served to provoke rather than quell what resistance defendants put up before they eventually sought legal counsel. Defendants were not right in resisting, to be sure, but plaintiff's behavior seemed almost designed to guarantee the continuation of this dispute. While plaintiff is free to choose the aggressive model of dispute resolution, within limits, that choice and attendant circumstances are properly considered in gauging the "feel" of the case and whether principles of equity support the extension of relief.

In summary: (1) plaintiff proved no actual harm; (2) defendants derived no unjust profits from their infringement; (3) defendants did not act in bad faith but in ignorance; and (4) it is unlikely that defendants' infringement will be repeated. Accordingly, even though violations within the purview of the Lanham Act occurred, an award of monetary damages or injunctive relief is unwarranted in this case. Principles of equity also militate against affording plaintiff its requested relief. Readers Digest Asso. v. Conservative Digest, Inc., 642

22

F. Supp. 144, 146-147 (D.D.C. 1986) aff'd, 821 F.2d 800 (D.C. Cir. 1987). See also, Quabaug Rubber, 567 F.2d at 161.


C.    Attorneys' Fees and Costs

Pep Boys also seeks attorneys' fees under 15 U.S.C. § 1117, which permits fees to be awarded to the prevailing party in "exceptional" circumstances. Exceptional cases under Section 1117 involve "malicious, fraudulent, deliberate, or willful infringement." Schroeder v. Lotito, 747 F.2d 801, 802 (1st Cir. 1984). In addition, exceptional cases usually involve a finding that the plaintiff suffered actual economic harm. Moore Business Forms, Inc. v. Ryu, 960 F.2d 486, 492 (5th Cir. 1992); Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 49 (3d Cir. 1991); VIP Foods v. Vulcan Pet, Inc., 675 F.2d 1106, 1107 (10th Cir. 1982). Having determined that the Aranosians and Capital City Motors, Inc., did not act willfully, maliciously, fraudulently, or deliberately, and that Pep Boys did not suffer any actual harm, the court finds that this case is far more ordinary than it is exceptional. That these defendants infringed is clear, but as infringements go it qualifies as an ordinary one. Defendants' thought they had staked a legitimate claim to the Pep Boys name in New Hampshire and acted on the incorrect

23

belief that, in New Hampshire at least, they were the Pep Boys. The infringement was the product of defendants' ignorance and mistaken belief in rights they erroneously thought arose from their local trade name registration, a not uncommon mistake.

This is not a case in which an infringer has knowingly appropriated another's mark, aware of the other's superior rights to it, for the express purpose of exploiting it by deceiving consumers as to origin while palming off inferior goods. Here, defendants relied on a rather insubstantial claim of right to the name Pep Boys, but it was a claim nevertheless, and they did think it valid at the outset. Their purpose was not noble, but neither was it fraudulent or deliberately malicious.

That defendants did not act fraudulently or in bad faith is a conclusion further supported by the fact that they openly registered the name Pep Boys with the New Hampshire Secretary of State and, when suit was filed, they consulted legal counsel and took reasonable unilateral steps (i.e., not pursuant to any settlement agreement) to abandon all use of the name, assist plaintiff in obtaining the New Hampshire trade name registration, deliver all offending invoices and materials for destruction, and

24

transfer the phone listings to plaintiff. Of course they could have and should have consulted counsel earlier, but the totality of circumstances surrounding this case persuades the court that this is not an "exceptional" case in which an award of attorneys' fees pursuant to the Lanham Act is either warranted or appropriate. See, e.g., Moore Business Forms, 960 F.2d at 491-92 (holding that "exceptional" cases involve a high degree of culpability on the part of the infringer, for example bad faith or fraud); Volkswagenwerk, 814 F.2d at 821 (an award of attorneys' fees is committed to the discretion of the court, which may properly take into account equitable considerations).

**Counts II & V - Deceptive Trade Practices:  RSA 358-A.**

A.   Acts Prohibited by RSA 358-A:2

The New Hampshire Consumer Protection Act, N.H. RSA 358-A, prohibits "any unfair method of competition [and] any unfair or deceptive act or practice in the conduct of any trade or commerce in this state." RSA 358-A:2.[2]  The statute specifically enumerates thirteen categories of prohibited conduct. Id.

---

[2] Corporations, as well as natural persons, are "persons" under the terms of the Consumer Protection Act and may bring suit to enforce the provisions of RSA 358-A:2 pursuant to RSA 358-A:10. See Nault's Auto. Sales, Inc. v. American Honda Motor Co., 148 F.R.D. 25, 48 (D.N.H. 1993).

Second among the thirteen categories of prohibited acts is "[c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or the certification by, another . . . ." In addition, section 358-A:2 prohibits "unfair" practices not explicitly included in the statutory list. "A practice is `unfair' if (1) it is `within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' (2) `it is immoral, unethical, oppressive, or unscrupulous,' or (3) `it causes substantial injury to consumers.'" Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993) (citations omitted).

In interpreting the terms of RSA 358-A, New Hampshire and federal courts have invited comparison with the analogous Massachusetts "unfair and deceptive" practices Act, Mass. Gen. L. ch. 93A.[3] Roberts v. General Motors Corp., 138 N.H. 532, 537 (1994); Chase v. Dorias, 122 N.H. 600, 602 (1982); Chroniak, 983 F.2d at 1146 n.11. Courts have interpreted the "likelihood of confusion" required by section 93A in a manner consistent with the "likelihood of confusion" required by the Lanham Act. See R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 879 (D. Mass. 1988);

---

[3] N.H. RSA 358-A was modelled on Mass. Gen. L. ch. 93A.

<u>Mobil Oil Corp. v. Auto-Brite Car Wash</u>, 615 F. Supp. 628 (D. Mass. 1984).  In this case, the court has concluded that defendants' actions created a likelihood of confusion under Lanham Act standards.  <u>See</u> <u>supra</u> p. 13.  Therefore, defendants' actions also created a likelihood of confusion under RSA 358-A:2.  Accordingly, the court finds that defendants engaged in an unfair or deceptive act or practice in violation of RSA 358-A:2.[4]

B.    <u>Relief</u>

Section 358-A:10 provides, "If the court finds for the plaintiff [under section 358-A:2], recovery shall be in the amount of actual damages or $1,000, whichever is greater."  RSA 358-A:10.  For the same reasons Pep Boys suffered no actual harm as a result of defendants' Lanham Act violations, the court finds that Pep Boys suffered no actual harm as a result of defendants' violation of section 358-A:2.  Therefore, defendants' are ordered

---

[4] Even if defendants' actions did not constitute a violation of the explicit terms of section 358-A:2, a violation of the Lanham Act constitutes "unfair" practices under section 358-A:2 because it falls "within at least the <u>penumbra</u> of some common-law, <u>statutory</u>, <u>or other established concept of unfairness.</u>" <u>Chroniak</u>, 983 F.2d at 1146 (emphasis added).

to pay Pep Boys damages in the statutorily required amount of $1,000.[5]

C.    Attorneys' Fees

In contrast to the restrictive terms of the Lanham Act attorneys' fees provision, RSA 358-A:10 simply states that "a prevailing party shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court."  RSA 358-A:10.  Pep Boys prevailed in its section 358-A:2 action in two meaningful ways.  First, Pep Boys carried its burden of proving a violation of RSA 358-A:2.  Second, Pep Boys has been awarded $1,000 in damages according to the terms of the statute.  In addition, the legislature's mandate of a $1,000 award "floor" establishes that the benefits of section 358-A:10 accrue to any plaintiff proving a violation of section 358-A:2, even absent a showing of actual harm.  This provision militates against an

_____

[5] Section 358-A:10 also states, "If the court finds that the use of the . . . act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times [the greater of actual damages or $1,000]."  Pep Boys claims that this provision entitles it to double or treble damages.  For the same reasons that defendants' actions do not constitute a willful or malicious infringement of the Lanham Act, see supra p. 22-24, the court finds that defendants' actions do not constitute a willful or knowing violation of section 358-A:2.  Therefore, double or treble damages are not justified under section 358-A:10.

28

interpretation of section 358-A:10 that would award reasonable fees only to a plaintiff proving actual harm. Accordingly, defendants are liable for plaintiff's costs and <u>reasonable</u> attorneys' fees, bearing in mind that the reasonableness of fees turns, in substantial part, on the limited nature of the benefits bestowed upon the prevailing party in the litigation. <u>Couture v. Mammoth Groceries, Inc.</u>, 117 N.H. 294, 296 (1977).

The parties shall make <u>good</u> <u>faith</u> efforts to agree, within 30 days of the date of this order, to an amount of attorneys' fees that would be reasonable under the circumstances. If the parties cannot agree, the plaintiff shall within 15 days thereafter file with the court a well-supported motion for reasonable attorneys' fees. Defendants may file an appropriate response not later than 15 days following the filing of plaintiff's motion, and, if necessary, a hearing will be held on the motion.

**Count III - Injury to Business Reputation: RSA 350-A:12.**

Plaintiff claims that it is entitled to the remedies provided by RSA 350-A:13 as a result of defendants having unlawfully injured its business and diluted the distinctive

29

quality of its trade mark in violation of RSA 350-A:12.

Plaintiff is, however, plainly mistaken.

As this court (DiClerico, J.) recently noted in <u>Optical Alignment v. Alignment Servs.</u>, No. 95-94-JD (D.N.H. November 1, 1995):

> New Hampshire's codification of the Model State Trademark Act, N.H. Rev. Stat. Ann. 350-A (1984), offers trademark and service mark owners protections beyond those afforded by the Lanham Act.  An essential element of an action for infringement brought under the state statute is registration with the New Hampshire secretary of state.  <u>See</u> RSA 350-A:11(I) (1984) (prohibiting the unauthorized use of a mark "registered under this chapter" in connection with the sale of goods or services); RSA 350-A:11(II) (1984) (proscribing the reproduction and application of "any such mark").  In the instant case, [plaintiff] has not alleged that it has properly registered its mark. Accordingly, the court dismisses [plaintiff's] 350-A claim for failure to plead a necessary element of a claim under the statute.

<u>Id.</u>  Similarly, plaintiff in this action had not, at times relevant to this inquiry, properly registered its mark with the New Hampshire Secretary of State.  Accordingly, it is not entitled to the protections (or remedies) afforded by RSA 350-A:12 and 13.

**Count IV - Fraudulent Registration:  RSA 349:10 & 350-A:10.**

Plaintiff claims that defendants violated RSA 349:10 and 350-A:10 when they knowingly made false or fraudulent representations in order to register the "Pep Boys" name and mark with the New Hampshire Secretary of State.  Section 350-A:10 provides:

> **Fraudulent Registration.**  Any person who shall for himself or on behalf of any other person, procure the filing or registration of any mark in the office of the secretary of state under the provisions hereof, by <u>knowingly making any false or fraudulent representation or declaration</u>, verbally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured thereby in any court of competent jurisdiction.

RSA 350-A:10 (emphasis added).  Section 349-A:10 similarly proscribes making false or fraudulent representations or declarations in registering any trade name.  Here, there is absolutely no evidence that defendants made false representations in registering their mark, and defendants' Application for Registration of the Pep Boys name, filed with the New Hampshire Secretary of State, contains nothing more than defendants' names and addresses and the trade name they sought to register. (Plaint. Ex. 13.)  Defendants made no false or fraudulent

31

representation or declaration, either implicitly or explicitly, in registering their trade name or mark. While obviously mistaken, defendants sought and obtained registration of the name in the good faith belief that they had the right to do so. From their perspective, the Secretary of State apparently agreed (the registration was allowed because no prior conflicting registrations had been granted). Moreover, plaintiff failed to prove that it suffered (or is likely to suffer) any quantifiable dilution of its federally registered marks. Accordingly, it is not entitled to damages under the state statutes. Finally, even if plaintiff had proved that defendants knowingly made false or fraudulent statements in violation of RSA 349:10 or 350-A:10, for the reasons set forth previously, it is not entitled to an injunction under RSA 349:10 or 350-A:12.

## CONCLUSION

For the foregoing reasons, the court holds that defendants' limited use of the trade name "Pep Boys Auto Parts" did constitute trademark infringement and false designation within the purview of the Lanham Act and unfair practice according to RSA § 358-A:2. Pep Boys, however, is not entitled to recover damages for actual harm or obtain injunctive relief. Pep Boys is

32

entitled $1,000 in statutory damages as mandated by RSA 358-A:10. This is not an "exceptional" case and plaintiff is, therefore, not awarded attorneys' fees under the Lanham Act. As the prevailing party, however, plaintiff is awarded reasonable attorneys' fees pursuant to RSA § 358-A:10. Plaintiff is also awarded its costs.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. Any requests for findings or rulings which are not expressly or implicitly granted in the body of this opinion are hereby denied. See Applewood Landscape & Nursery Co. v. Hollingsworth, 884 F.2d 1502, 1503 (1st Cir. 1989); Morgan v. Kerrigan, 509 F.2d 580, 588 n.14 (1st Cir. 1974), cert. denied, 421 U.S. 963 (1975).

Judgment shall be entered in favor of the plaintiff on its claims under the Lanham Act (15 U.S.C. § 1114(1) and 1125(a)) and its claims under RSA 358-A:2. Judgment shall be entered in favor of defendants on plaintiff's remaining state law claims over which the court has exercised supplemental jurisdiction. Costs and reasonable attorneys' fees are awarded to plaintiff.

33

SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

November 30, 1995

cc:  Brian T. Tucker, Esq.
     Marsha G. Gentner, Esq.
     David P. Slawsky, Esq.