**INTERMOUNTAIN RESEARCH AND ENGINEERING COMPANY, Inc., Ireco Chemicals, and Iron Ore Company of Canada, Plaintiffs-Appellants,**

v.

**HERCULES INCORPORATED and Kaiser Steel Corporation, Defendants-Appellees.**

**No. 22142.**

United States Court of Appeals Ninth Circuit.

Jan. 17, 1969.

W. Philip Churchill, of Fish, Richardson & Neave, New York City, Harris, Kiech, Russell & Kern, Los Angeles, Cal., for plaintiffs-appellants.

Rober D. Fier, of Kenyon & Kenyon, New York City, Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Beverly Hills, Cal., for defendants-appellees.

Before MADDEN,* Judge of the United States Court of Claims, MERRILL and HUFSTEDLER, Circuit Judges.

## J. WARREN MADDEN, Judge:

This is an action for an injunction and damages for patent infringement. The District Court granted defendants' motion for summary judgment and held plaintiff's Patent No. 3,113,059 invalid under Title 35 United States Code, § 102(b) as being anticipated by prior art patents and also under 35 U.S.Code § 103 as being obvious to a person with ordinary skills in the art. We reverse.

The alleged infringed patent is referred to herein as the Ursenbach patent. As described in the opening paragraph of the patent, the "invention relates to the stabilization of aqueous systems containing particulate aluminum." The patent explains that in recent years aqueous slurry blasting explosives have been developed which contain one or more inorganic oxidizing agents, water and particulate aluminum. (An "aqueous slurry" is a soupy mixture in which solid matter is suspended.) Upon storage the particulate aluminum in such a slurry reacts with the water to form hydrogen which presents an explosion hazard. The patent declares its purpose to be the inhibition of the aluminum-water reaction "in such aqueous systems, including slurry blasting agents," and explains that "the method of this invention comprises the addition of a stabilizing amount of a phosphate selected from the group consisting of ammonium and alkali metal phosphates, to an aqueous slurry containing particulate aluminum * * * " Thus, the essential teaching of the Ursenbach patent is that the aluminum-water reaction can be inhibited in aqueous slurries containing water, aluminum and inorganic oxidizing agents by the addition of any one of the designated group of phosphate salts.

The District Court concluded that the Ursenbach patent was invalid because the subject matter had been anticipated by the prior Faber patent. The Faber patent, issued some 37 years before Ursenbach, is also concerned with the inhibition of the aluminum-water reaction in an aqueous slurry containing aluminum, water, and an inorganic oxidizing agent. The end use of the Faber slurry is in the manufacture of what is known in the fireworks' industry as a "sparkler" of the kind used to celebrate the Fourth of July. The Faber patent relates that manufacturers had for some time been troubled by the fact that the sparkler slurry, often within a few hours after mixing, began to bubble and boil (ferment), generating heat and becoming dangerous. The fermentation reaction is recognized by Faber to be caused by the reaction of water and aluminum which liberates hydrogen, which in turn reacts with the nitrate salt oxidizer to produce ammonia and leave an alkaline by-product in the slurry mixture. The Faber patent states that it is well known that as the alkalinity of the slurry increases, the speed of the aluminum-water reaction is also increased.

Faber determined that the answer to the fermentation problem in his slurry was to control the alkalinity of the slurry. Accordingly, Faber describes

---

* Senior Judge, The United States Court of Claims, sitting by designation.

his invention as the addition to the slurry of a "buffer" substance which will prevent the development of the alkaline reaction. The patent explains that there are many mild acids and acid salts available which serve to give the slurry the necessary acid reaction, and calcium mono phosphate is cited as the best example of such acid salts. The District Court concluded that Faber's citation of this phosphate compound as the most effective of his acid salt buffers was equivalent to the subsequent teaching of the Ursenbach patent and on this ground granted the defendants' motion for summary judgment under 35 U.S. Code § 102(b).

The plaintiff contends that the District Court's ultimate finding of anticipation in this case is in error because Faber was concerned only with controlling the alkalinity of his slurry mixture and taught only the use of a broad range of acid salt buffers to inhibit the aluminum-water reaction in the particular alkaline environment of the Faber slurry, whereas plaintiff's patent teaches the use of phosphates which work to inhibit the aluminum-water reaction directly without regard to the alkalinity of the slurry mixture. This distinction is important, plaintiffs contend, because their blasting slurries contain little alkalinity and thus could not effectively utilize the acid salt method of inhibition taught by Faber.

■ While Faber did single out calcium mono phosphate as the most effective of his acid salt buffers, his patent does not attribute significance to or claim as relevant the phosphate characteristic of this particular acid salt. It is true, as the defendants point out, that a patentee's failure to understand correctly the scientific principles upon which a claimed invention is based is immaterial to patentability as long as the method and operative result of the invention are correctly described. DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 668, 51 S.Ct. 563, 75 L.Ed. 1339 (1931); Smith v. Hall, 301 U.S. 216, 226, 57 S.Ct. 711, 81 L.Ed.

1049 (1937). This principle of law would be determinative of the anticipation issue here if Faber taught the general use of phosphate salts as inhibitors of the aluminum-water reaction even though misunderstanding the chemical principles of the phosphate inhibition. We agree with plaintiffs, however, that the teaching of Faber is on its face limited to the use of acid salt buffers to inhibit the aluminum-water reaction in alkaline solutions. Faber's citation of a particular salt—incidentally a phosphate as far as Faber was concerned—as the most effective of his acid salt buffers is not the equivalent of Ursenbach's teaching of the significance of certain phosphates as a class, and the principles of the *DeForest* and *Smith* cases do not apply here.

■ Defendants may, of course, be able to show that there is no significant difference in practice between Faber's acid salt buffers and Ursenbach's phosphate inhibitors. But plaintiffs offered evidence that the Faber acid salts would not be effective inhibitors in the Ursenbach slurries, and in these circumstances the issue of equivalence should not be disposed of upon a motion for summary judgment. We conclude that as to the Section 102(b) issue, summary judgment of anticipation was not appropriate.

As a second ground of decision, the District Court also found the Ursenbach patent invalid for obviousness under 35 U.S.Code § 103, finding the subject matter of Ursenbach obvious to a person of ordinary skill in the art in light of the prior art represented by the Faber patent and a third patent referred to as the Taylor patent. The Taylor patent relates to the addition to solid ammonium nitrate explosives of an inhibitor to cool down the explosion and eliminate flames. The patent notes that a small amount of certain acid buffer salts—naming certain phosphate salts—may be added to the explosive compounds involved to minimize alkalinity of the mixture. Though the dry explosives with which the Taylor patent is concerned contain neither water nor aluminum, the

patent was cited by defendants to show that at the time of filing the Ursenbach patent application, certain phosphate salts were recognized by the art to be useful alkaline buffers in nitrate explosives. The District Court concluded that the Ursenbach patent was nothing more than the obvious use of one of the buffer salts mentioned in Taylor as the buffer salt called for in the aqueous slurry of Faber.

The test for obviousness under 35 U.S.Code § 103, has recently been deliniated by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), where the court stated that the issue of obviousness " * * * lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." (383 U.S. at 17, 86 S.Ct. at 694) This court in its recent decisions in Walker v. General Motors Corporation, 362 F.2d 56 (1966), held that the issue of obviousness can be disposed of upon a motion for summary judgment under the Supreme Court's *Graham* tests, but only where the scope and content of the prior art and the differences between the prior art and the claims at issue are simple, requiring no explanation, and where there is no genuine issue of fact as to the level of ordinary skill in the pertinent art. The Supreme Court's insistence in Graham on an inquiry "beamed with greater intensity on the requirements of § 103" dictates caution when approaching the issue of obviousness upon a motion for summary judgment. See Colourpicture Publishers v. Mike Roberts Color Productions, 394 F.2d 431 (CA 1, 1968).

The evidentiary findings of the District Court with regard to the scope and content of the prior art were limited to findings that the Faber patent "teaches the use of buffer salts, and in particular a phosphate salt, to inhibit the gas-evolving aluminum-water reaction in an aqueous slurry composition containing water, particulate aluminum, and an inorganic nitrate," and that the Taylor patent "teaches that ammonium dihydrogen phosphate, sodium dihydrogen phosphate, and alkali metal phosphates in general were known buffer salts which could be incorporated in explosive compositions containing inorganic nitrate." From these factual findings the District Court concluded as a matter of law that the differences, if any, between the subject matter of the Ursenbach patent and the prior art patents would have been obvious to a person with ordinary skill in the pertinent art. The court made no evidentiary findings focusing on the specific differences from prior art claimed by plaintiffs for the Ursenbach patent or upon the level of ordinary skill in the art.

In response to the District Court's conclusion of obviousness, plaintiffs contend that the nature of the stabilization problems encountered in the alkaline slurry with which Faber was concerned and in the dry Taylor compounds containing neither aluminum nor water posed chemical problems fundamentally different from those encountered in the Ursenbach slurries. Plaintiffs offered evidence indicating that their blasting slurries contain little alkalinity and that for this reason Faber's citation of a phosphate salt as the most effective of his alkaline buffers does not suggest to one skilled in the art, the general class of phosphate inhibitors as the answer to the stabilization problem in the Ursenbach slurries.

Plaintiffs also challenge the District Court's characterization of the scope and content of the prior art as inaccurate and incomplete and claim differences between the Ursenbach teaching and that of the prior art which were not specifically considered by the District Court in its findings.

Unlike the patent claims before this court in Walker v. General Motors Corporation, supra, the subject matter of the patents involved in this case is not simple and easily understood without ex-

planation. Whether the claims of the Ursenbach patent follow obviously from Faber's citation of a phosphate salt as the best example of his acid salt buffers, or from Taylor's recognition of phosphate salts as useful alkaline buffers in solid explosives, or from a combination of the two prior patents, raises factual issues relating to the differences between Ursenbach and the prior art and the level of ordinary skill in the pertinent art upon which we believe expert guidance and the full exposition of a trial is required. In the circumstances of this case we conclude that the issue of obviousness is not amenable to resolution upon a motion for summary judgment.

The judgment of the District Court will be vacated and the case remanded for further proceedings consistent with this opinion.